IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANTHONY M. BARNES,                       )
                                         )
                    Plaintiff,           )
                                         )
                                         )        CIV-06-1298-D
v.                                       )
                                         )
MICHAEL J. ASTRUE,                       )
  Commissioner of Social Security        )
  Administration,                        )
                                         )
                    Defendant.           )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 416(i), 423.   Defendant has answered the

Complaint and filed the administrative record (hereinafter TR___), and the parties have

briefed the issues.   The matter has been referred to the undersigned Magistrate Judge for

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following reasons, it

is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed his application for Title II disability benefits on April 13,

2005. (TR 45-47, 63).  In his application, Plaintiff stated that he became disabled on March

1

1, 2005.  Plaintiff alleged disability due to cleft lip and palate, low back and neck pain, left leg tingling, nerve deafness, and injuries to his left thumb. (TR 56).  Plaintiff stated that he stopped working on September 13, 2003, due to his retirement and that he previously worked as a machine operator from 1978 until his voluntary retirement. (TR 47, 57, 62).   In May 2005, Plaintiff described his daily activities as including taking medication for back pain, caring for his wife, feeding and walking his dog, preparing meals or obtaining take-out food at a restaurant, mowing the yard, home maintenance chores that did not involve heavy lifting, bending, or standing, or sitting in one place, driving a car, grocery shopping, paying bills, weight lifting, exercising, swimming, "limited" home repairs, attending church, watching television, and reading. (TR 67-74).  Plaintiff stated that a back brace and orthopedic cushion eased his back pain. (TR 73).  Plaintiff's application was administratively denied. (TR 24, 25).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Moser ("ALJ") on February 15, 2006, at which Plaintiff and a vocational expert ("VE") testified. (TR 160-184).

Following the hearing, the ALJ issued a decision in which the ALJ reviewed the medical and nonmedical evidence in the record and found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 11-19).  Plaintiff's request for review of the decision was denied by the Appeals Council. (TR 4-6).  Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Issues Presented in Appeal

Plaintiff contends that the ALJ erred in failing to include fine fingering limitations in

the residual functional capacity assessment, erred in determining the credibility of Plaintiff's allegation of disabling pain, erred in determining the issue of transferability of skills, and erred in determining that Plaintiff has the residual functional capacity for any work.

III. Standard of Review

The Court must determine whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the Court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R. § 404.1520(b)-(f); <u>see</u> <u>also</u> <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail).  Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." <u>Grogan</u>, 399 F.3d at 1261; <u>accord</u>, <u>Channel v. Heckler</u>, 747 F.2d 577, 579 (10th Cir. 1984).

In Plaintiff's case, Plaintiff testified he was 58 years old at the time of the hearing.  At this age, Plaintiff was considered a person of "advanced age" under the Commissioner's regulations. 20 C.F.R. § 404.1563(e).  Under these circumstances, the Commissioner "'faces a more stringent burden'" at step five to deny benefits to such an older claimant.  <u>Emory v. Sullivan</u>, 936 F.2d 1092, 1094 (10th Cir. 1991)(quoting <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990)).   Under the regulations, a person of advanced age with severe impairments limiting the claimant to sedentary or light work will be found disabled unless the person has skills that can be transferred to other skilled or semiskilled work. 20 C.F.R. § 404.1568(d)(4).

IV.  <u>Residual Functional Capacity Assessment</u>

At the fourth step of the evaluation process required of administrative factfinders, the

ALJ is required to determine whether the claimant retains the residual functional capacity ("RFC") to perform the requirements of all past relevant work.  At step four, the claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).  At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993).  The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

Plaintiff contends that the ALJ's RFC finding is flawed in several respects.  In the ALJ's decision, the ALJ followed the requisite sequential evaluation procedure in analyzing Plaintiff's application for disability benefits.  At the first step, the ALJ found that Plaintiff had not worked since his alleged disability onset. (TR 12). At the second step, the ALJ found that Plaintiff had severe impairments due to degenerative disc disease of the lumbar spine and bilateral hearing loss.  (TR 12).  At the third step, the ALJ found that these severe

5

impairments were not *per se* disabling under the agency's Listing of Impairments for spinal disorders and hearing impairments. (TR 12-13).   At step four, the ALJ determined that despite Plaintiff's severe impairments Plaintiff had the RFC to perform a limited range of light work.[1]   The ALJ found that Plaintiff retained the capacity to perform light work limited to jobs requiring no more than occasional stooping, allowing a sit/stand option, and avoiding environments with excessive noise. (TR 15).   In connection with this RFC finding, the ALJ's decision reflects consideration of relevant portions of the medical record, the RFC assessments by state agency medical reviewers, and Plaintiff's subjective statements. (TR 13-16).

Plaintiff first contends that the ALJ's RFC finding should have included "limitations in fine fingering" with the left hand. Plaintiff's Brief, at 11.   The ALJ recognized that the medical record showed Plaintiff had "normal grip strength, despite limited use of the left thumb.   Notably, such limitations would not preclude the grasping, holding or turning of objects." (TR 15).

There is no medical evidence in the record with respect to the original thumb injury suffered by Plaintiff.   However, in a consultative physical examination conducted on June 24, 2005, Plaintiff informed the consultative examiner, Dr. Matthew Davis, that he

---

[1]Light work is defined in the pertinent regulations as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1568(b). Jobs in this category generally require mostly standing or walking or require sitting with pushing and pulling of arm-hand or leg-foot controls. Id.   "The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, * 6 (1983).

previously experienced a "saw accident," that since the accident he had been unable to flex the distal phalanx of the left thumb, but that he was able to grasp objects with his left hand. (TR 130). Dr. Davis noted that Plaintiff had no flexion ability of his distal, or outer, thumb joint but that Plaintiff exhibited no deficits in his ability to flex the proximal phalange (inner joint) of the left thumb and both joints of the right thumb. (TR 130, 133). Dr. Davis also stated that Plaintiff had the functional ability to effectively oppose the thumb to the finger tips, manipulate small objects, and grasp tools such as a hammer, even though he had difficulty bending his left thumb. (TR 134). Plaintiff also exhibited full grip strength in both hands. (TR 130). In consideration of Dr. Davis's report of the consultative examination, an agency medical reviewer opined that Plaintiff "would have difficulty with fine manipulation with the left hand." (TR 140). Plaintiff testified that he could pick up small objects with his left hand but that he did not have feeling in his left thumb. (TR 178).

The ALJ's RFC assessment which does not include fine fingering limitations is supported by substantial evidence in the record. No treating physician or physical examiner found that Plaintiff's fine fingering ability was diminished due to the left thumb injury, and there is no evidence that this thumb injury interfered with Plaintiff's past functioning. Plaintiff himself disavowed any limitation in his ability to pick up small objects with his left hand. The ALJ considered but rejected the agency medical reviewer's RFC assessment with respect to Plaintiff's fingering ability. The ALJ did not err in giving controlling weight to the report of the consultative physical examiner. See Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)("The opinion of an examining physician is generally entitled to less

weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.")(citing 20 C.F.R. § 404.1527(d) and SSR 96-6p, 1996 WL 374180, at *2).

Plaintiff next questions the ALJ's finding that Plaintiff's allegation of disabling pain was not credible. To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted).  "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ considers such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna v. Bowen, 834 F.2d 161, 165-166 (10th Cir. 1987).

The ALJ's decision reflects a specific, detailed discussion of the reasons for the credibility finding.  As support for the decision, the ALJ pointed to Plaintiff's own testimony

at his administrative hearing and prior statements in the record, in which Plaintiff reported a wide range of daily activities including cooking, cleaning, yard work, grocery shopping, driving, attending church, swimming, exercising, reading, performing some home repairs, taking care of household finances, and caring for his wife and dog.  The ALJ also reasoned that "[i]n view of his level of functioning, the claimant's symptoms appear to be well-controlled with the use of prescribed medications and swimming exercises." (TR 16).  The ALJ appropriately considered the absence of evidence of side effects to the Plaintiff's prescribed medications and the inconsistency of Plaintiff's allegations with other medical evidence in the record. (TR 16).  The ALJ summarized the relevant medical evidence in the decision, including the report of Dr. Stephen Cagle, a neurogsurgeon, an MRI scan of Plaintiff's lumbar spine, the office notes of Plaintiff's treating physician, Dr. Merle Davis, and the report of the consultative examiner, Dr. Matthew Davis.  (TR 13-14).

Plaintiff contends that the ALJ's discussion of Dr. Cagle's report is not a "fair description" of this evidence.  Plaintiff suggests that the ALJ ignored Dr. Cagle's statement concerning Plaintiff's back pain.  To the contrary, the ALJ's decision reflects consideration of Dr. Cagle's statement in his report that Plaintiff was experiencing "a lot of mechanical lower back pain and some tingling down the left thigh." (TR 13).   The ALJ did not err in also considering Dr. Cagle's clinical findings that in a physical examination Plaintiff exhibited good arm and leg strength, normal reflexes, no muscle atrophy, and a safe gait. (TR 13).

The ALJ did not, as Plaintiff posits, ignore Plaintiff's allegations of pain or

mischaracterize the evidence.  Rather, the ALJ properly considered Plaintiff's allegations in light of the medical and non-medical evidence in the record.  The ALJ found that Plaintiff's allegation of pain and limited range of movement caused by his back impairment was partially credible and found that Plaintiff's ability to perform the full range of work at the light exertional level was further restricted as a result of his pain-causing back impairment by limitations in stooping and the need for a sit or stand option.

There is substantial evidence in the record to support this RFC assessment, including Plaintiff's own statements in the record concerning his normal activities, his subjective assessment of his work-related abilities to lift, pick up small objects, bend, and stoop, and his statements concerning the effectiveness of exercise and medications in easing his pain and discomfort.  (TR 67-74, 117, 129, 166, 168, 169, 172 -178).  Other evidence in the record supporting the ALJ's RFC assessment is found in the reports of Dr. Cagle, Dr. Merle Davis, and Dr. Matthew Davis of physical examinations of Plaintiff showing no neurological or strength deficits, normal gait, no muscular spasms or atrophy, normal heel and two walking, no need for assistive devices for walking, and the physicians' clinical observations of Plaintiff during the examinations.  (TR 117-118, 120, 122, 123, 129-135, 138).  As the ALJ noted in his decision, Dr. Cagle recommended that Plaintiff undergo surgery to improve "some mild stenosis" that the surgeon felt "might improve with a decompression." (TR 118).  However, Plaintiff declined this recommended operation and informed Dr. Cagle and his treating physician that he preferred to treat the pain conservatively with medications and exercise. (TR 118, 120).  Nothing in Dr. Cagle's report indicated that Plaintiff was unable

to work due to his back impairment.  No error occurred with respect to the ALJ's evaluation of the evidence at step four.

V. <u>Transferability of Skills</u>

At step five of the sequential evaluation process, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because he was capable of performing other work available in the economy. (TR 19). In support of this decision, the ALJ relied on the testimony of the VE at Plaintiff's administrative hearing.  The VE testified that Plaintiff had acquired skills in his previous work as a bailer operator, utility operator, material handler, and bench grinder, including the ability to operate small machinery and hand tools, maintain a production rate, read gauges, and keep basic records. (TR 182).  The ALJ adopted this testimony concerning transferable skills. (TR 18).   The ALJ also relied on the VE's testimony in finding that an individual with Plaintiff's RFC for work could perform the light jobs of photo finish lab worker and sewing machine operator. (TR 19, 180-181).

Plaintiff contends that the ALJ erred in finding that Plaintiff had previously worked as a bench grinder.  Plaintiff refers to a two-page description of his past work submitted at the administrative hearing. (TR 99-100).  Although the VE testified that Plaintiff's previous work included the position of bench grinder, Plaintiff contends this testimony was erroneous in light of Plaintiff's description of his previous jobs.  Plaintiff was given the opportunity to cross-examine the VE during the administrative hearing but did not question either the VE's description of the Plaintiff's previous jobs or the VE's identification of transferable skills obtained by Plaintiff in those previous jobs.

In his own description, Plaintiff described a portion of his job as involving dumping film onto a long, waist-high, metal table in front of a grinder, feeding the film into the grinder, and running the grinder to grind up the film.  (TR 100).  Plaintiff stated that if the grinder became "plugged" he would have to remove a steel plate from the back of the grinder and use a tool to turn the grinder blades by hand to get to the film that was hung up in between the blades, and clean the blades to unplug the grinder. (TR 100). Plaintiff described his jobs as requiring him to use machines, tools, or equipment, use technical knowledge or skills, write and complete reports, handle, grab or grasp big objects, and write, type, or handle small objects. (TR 57-58).

There was sufficient evidence in the record to support the ALJ's finding, based on the Plaintiff's own description and the VE's testimony, that Plaintiff had previously worked as a bench grinder[2] and that Plaintiff's previous jobs had enabled him to acquire the transferable skill of operating small machinery and hand tools. Plaintiff has not shown that the ALJ erred in relying on the VE's testimony to determine Plaintiff's previous jobs or the transferable skills Plaintiff obtained in his previous work.

According to SSR 00-4p, the Dictionary of Occupational Titles ("DOT") lists a specific vocational preparation ("SVP") time for each described occupation and, using the

---

[2]The job of bench grinder is described in the Dictionary of Occupational Titles as "[m]ov[ing] metal objects, such as castings, billets, machine parts, sheet metal subassemblies, or arrowheads, against abrasive wheel of bench grinder to grind, smooth, or rough-finish objects to specifications... [m]ay position workpiece in automatic feed mechanism." U.S. Dep't of Labor, Dictionary of Occupational Titles, Vol. II, at 690 (705-684-010).

skill level definitions in the regulations, semiskilled work corresponds to an SVP of 3 to 4. SSR 00-4p, 2000 WL 1898704, at * 3.  SSR 00-4p states that "the regulatory definitions of skill levels are controlling" with respect to the classification of an occupation's skill level. Id.

Plaintiff contends that the ALJ could not rely on the job of a sewing machine operator in denying Plaintiff's application for benefits because the DOT describes this job as having an SVP level of four and the VE mistakenly testified that the job had an SVP of three. Moreover, relying on SSR 00-4p, Plaintiff contends that the VE described his prior work as having an SVP of three and "skills cannot be transferable from a SVP 3 to a SVP 4 job." Plaintiff's Brief, at 25.

In Haddock v. Apfel, 196 F.3d 1084 1091 (10th Cir. 1999), the Tenth Circuit held that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."  The VE aptly described the sewing machine operator job as a semiskilled job. (TR181). The VE also described Plaintiff's previous jobs as involving semiskilled work. (TR 180).  Because both the DOT's SVP 3 and the SVP 4 job classifications denote semiskilled work, the VE's misidentification of the DOT's SVP level for the sewing machine operator position did not create a conflict that required an explanation pursuant to Haddock before the ALJ could rely on this job in denying benefits.

Plaintiff relies on SSR 00-4p to support his argument that "skills cannot be

13

transferable from a SVP 3 to a SVP 4 job." Plaintiff's Brief, at 25.  This policy interpretation states that

> [e]vidence from a VE, VS, or other reliable source of occupational information cannot be inconsistent with SSA policy on transferability of skills.  For example, an individual does not gain skills that could potentially transfer to other work by performing unskilled work.  Likewise, an individual cannot transfer skills to unskilled work or to work involving a greater level of skill than the work from which the individual acquired those skills. See SSR 82-41.

SSR 00-4p, 2000 WL 1898704, at * 3.  Pursuant to SSR 82-41, "[t]ransferability means applying work skills which a person has demonstrated in vocationally relevant jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82-41, 1982 WL 31389, at * 2. "Where transferability is at issue, it is most probable and meaningful among jobs in which: (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e., from a skilled to a semiskilled or another skilled job, or FROM ONE SEMISKILLED TO ANOTHER SEMISKILLED JOB)...." Id., at * 5 (emphasis added).

In this case, the VE testified that Plaintiff's previous jobs as well as the sewing machine operator position are semiskilled jobs.  The policy interpretations, SSR 00-4p and SSR 82-41, cannot be read to state that a job with an SVP of 4 can never be performed by an individual with past work experience at the SVP 3 level.  Rather, the regulatory definition of semiskilled work prevails, and transferability of skills is not foreclosed for jobs classified by the agency as falling within the semiskilled range (with the SVP of 3 and 4).  Thus, the

ALJ could rely on the sewing machine operator position to support her decision to deny Plaintiff's application for benefits.

Even if the ALJ could not rely on the sewing machine operator job to support her decision, the ALJ identified the additional job of photo finish lab worker as a job within the economy which Plaintiff could perform in light of Plaintiff's RFC for work.  Plaintiff concedes that this job remained as a viable position for Plaintiff in light of his vocational characteristics, including his transferable skills.  Plaintiff vaguely asserts that the ALJ did not provide sufficient discussion of the specific duties of his past work and again asserts that he did not obtain "the skills to which the VE testified," apparently relying on his earlier argument with regard to transferable skills.  However, Plaintiff's own description of his previous work, as well as the VE's testimony, provides substantial evidence of the vocational requirements of Plaintiff's previous jobs and the transferable skills obtained by Plaintiff in his prior work.  The ALJ sufficiently explored this  issue at the administrative hearing and made specific findings concerning the skills Plaintiff acquired that were transferable to other jobs within the same skill level as his previous work.  No error occurred in this respect.  Because there is substantial evidence in the record to support the Commissioner's decision, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits.

The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____October 1st_____, 2007, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____11th_____ day of _____September_____, 2007.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE