IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTHONY M. BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-06-1298-D |
| | ) |
| MICHAEL J. ASTRUE,[1] Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

This matter is before the Court for review of the Report and Recommendation issued by United States Magistrate Judge Gary M. Purcell pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). Judge Purcell recommends affirmance under 42 U.S.C. § 405(g), of a decision of the Social Security Administration denying Plaintiff's application for disability insurance benefits. Plaintiff has timely filed a written objection. Thus the Court must make a *de novo* determination of any portion of the Report to which specific objection is made, and may accept, modify, or reject the recommended decision. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence, and whether [he] applied the correct legal standards. Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion. Moreover, all the ALJ's required findings must be supported by substantial evidence . . . .

*Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotations and citations omitted).

---

[1] Commissioner Michael J. Astrue has been substituted pursuant to Fed. R. Civ. P. 25(d)(1).

Although Plaintiff re-urges all issues raised in his opening brief, his objection focuses on the step-five findings of the administrative law judge (ALJ).[2] Plaintiff argues that Judge Purcell ignored controlling case law, *Dikeman v. Halter*, 245 F.3d 1182 (10th Cir. 2001), in his discussion of those findings, and wrongly concluded that the ALJ properly relied on the testimony of a vocational expert (VE) to establish Plaintiff's transferable skills, particularly skills of operating small machinery and using hand tools.  Specifically, Plaintiff argues that the ALJ failed to perform his duty under *Dikeman* to analyze a claimant's transferable skills and that the evidence does not support the ALJ's finding that Plaintiff had worked as a bench grinder – the only job in his work history from which he allegedly could have acquired the transferable skills at issue.  For the reasons that follow, the Court finds upon independent consideration of the record that the ALJ's findings regarding Plaintiff's transferable skills, which simply adopt the VE's testimony, are not supported by substantial evidence.

## Discussion

First, the Court rejects Plaintiff's argument that legal error occurred in Judge Purcell's failure to cite *Dikeman* and the ALJ's failure to follow it.  *Dikeman* did not announce a judicial standard but simply applied the agency's policy interpretation as set forth in Social Security Ruling 82-41. *See Dikeman*, 245 F.3d at 1185 (quoting S.S. Rul. 82-41, 1982 WL 31389).  Also, the court of appeals did not hold in *Dikeman* that an ALJ cannot rely on VE testimony regarding a claimant's transferable skills.  Rather, the court found that the expert in that case failed to identify what specific skills the claimant had acquired in her past work – in part, because there was no evidence of the

---

[2] At this final step of the sequential analysis, the agency bears the burden to establish that the claimant can perform jobs that exist in significant numbers in the national economy. See Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

duties the claimant had performed – and the ALJ failed to make specific findings regarding transferable skills. *See Dikeman*, 245 F.3d at 1187. Accordingly, the matter was remanded to the agency for the ALJ to develop appropriate evidence and to make appropriate findings. *See id*. at 1188. Clearly, however, an ALJ may properly utilize a vocational expert in determining the issues of transferable skills and available jobs. *See* 20 C.F.R. § 404.1566(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist."); *see also Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("a vocational expert may be called for the limited purpose of determining whether the claimant's skills acquired during past work would transfer to a category containing the exertional level the administrative law judge has concluded the claimant could perform").

As to the ALJ's alleged error in her factual findings that Plaintiff had acquired transferable skills of operating small machinery and hand tools in his past relevant work, a brief discussion of the record is necessary to the analysis. The ALJ made the following findings regarding Plaintiff's past jobs and transferable skills:

> [The claimant's] past work experience includes employment as a boiler [sic] operator, material handler, utility operator, and bench grinder, **according to the testimony of the vocational expert**. (Tr. 11-12, emphasis added.)
>
> The vocational expert testified the claimant has acquired the following work skills, which are transferable to the semiskilled work functions of other work: read gauges, operate machinery, maintain production standards, and use hand tools. The Administrative Law Judge **concurs with the testimony of the vocational expert** and finds the claimant has the aforementioned transferable skills. (Tr. 17, emphasis added.)

The vocational testimony regarding Plaintiff's past work, adopted by the ALJ, was provided by Christy Wilson, the expert called by the ALJ at the hearing. Specifically, the VE testified that she

had reviewed a written summary prepared by Plaintiff and submitted at the hearing (Tr. 163, marked Ex. 12E, discussed below) regarding his job duties, and she identified the following jobs, by references to the Dictionary of Occupational Titles, that Plaintiff had performed: bailer operator, 920.685-010, heavy unskilled job; material handler, 929.687-030, heavy semiskilled job; utility operator, 709.684-094, medium semiskilled job; and bench grinder, 705.684-010, medium semiskilled job. (Tr. 180.) The VE also testified that Plaintiff had acquired the transferable skills referenced by the ALJ, including the abilities to operate small machinery and use hand tools.[3] (Tr. 182.) Plaintiff challenges the ALJ's findings regarding the nature of Plaintiff's past work and acquired job skills, emphasizing the job of bench grinder because he assumes it is the one on which the VE based her opinion that Plaintiff had acquired the transferable skills of operating small machinery and using hand tools.

Upon examination of the jobs cited by the VE, the Court concurs in Plaintiff's assessment that the VE's testimony does not provide substantial evidence to support the ALJ's findings regarding Plaintiff's acquired work skills. One occupation identified by the VE – utility operator, 709.684-094 – plainly has no application to Plaintiff's employment by Mobil or Exxon Mobil.[4] Another semiskilled job listed in the VE's testimony – material handler, 929.687-030 – may include

---

[3] Regarding machinery, the VE testified that one of Plaintiff's transferable skills was "the ability to operate small machinery" (Tr. 182), but when asked by the ALJ to repeat the list of transferable skills, the VE described this skill as the ability to "[o]perate machinery" (Tr. 183). The ALJ referenced only the second description but, in her findings, "concur[red] with the testimony of the vocational expert." (Tr. 17, 18.)

[4] The Dictionary of Occupational Titles defines this job as one in which the worker "[a]ssembles monotubes, unloads and stores nuclear reactor fuel elements, and decontaminates work area." U.S. Dep't of Labor, Dictionary of Occupational Titles, 709.684-094 (4th ed., rev. 1991), *available at* 1991 WL 679127. All of the described job duties involve monotubes, monotube loading machines, or safety procedures regarding radiation. *See id*. As discussed below, Plaintiff's jobs involved none of these things.

duties that involve the operation of small machinery and the use of hand tools.[5] However, Plaintiff's description of the job of material handler that he performed in a plant for Mobil or Exxon Mobil did not include such duties. At the hearing, Plaintiff provided a two-page description of his various jobs, and he explained his duties as a material handler as follows:

> I would ride a stand up or set down [tug] all day, pulling racks of mill rolls to the warehouse and take empty racks back. I also took 4 full reclaim carts at a time to the Recycle Department, and unhook them and get 4 more empty ones and take them back to where I got the full ones. You would have to get off and on the tug to hook

---

[5] The Dictionary of Occupational Titles defines this job as follows:

Loads, unloads, and moves materials within or near plant, yard, or work site, performing any combination of following duties: Reads work order or follows oral instructions to ascertain materials or containers to be moved. Opens containers, using steel cutters, crowbar, clawhammer, or other handtools. Loads and unloads materials onto or from pallets, trays, racks, and shelves by hand. Loads materials into vehicles and installs strapping, bracing, or padding to prevent shifting or damage in transit, using handtools. Conveys materials to or from storage or work sites to designated area, using handtruck, electric dolly, wheelbarrow, or other device. Secures lifting attachments to materials and conveys load to destination, using hand-operated crane or hoist, or signals crane or hoisting operators to move load to destination . . . . Counts, weighs, and records number of units of materials moved or handled on daily production sheet. Attaches identifying tags or labels to materials or marks information on cases, bales, or other containers. Loads truck . . . . Stacks or assembles materials into bundles and bands bundles together, using banding machine and clincher. Clamps sections of portable conveyor together or places conveyor sections on blocks or boxes to facilitate movement of materials or products. Removes samples of materials, labels with identifying information, and takes samples to laboratory for analysis . . . . Lifts heavy objects by hand or using power hoist, and cleans work area, machines, and equipment, using broom, rags, and cleaning compounds, to assist machine operators. Makes simple adjustments or repairs, such as realigning belts or replacing rollers, using handtools. Assembles crates to contain products, such as machines or vehicles, using handtools and precut lumber. Shovels loose materials, such as sand, gravel, metals, plastics, or chemicals, into machine hoppers or into vehicles and containers, such as wheelbarrows, scrap truck, or barrels. May occasionally operate industrial truck or electric hoist to assist in loading or moving materials and products. . . .

U.S. Dep't of Labor, Dictionary of Occupational Titles, 929.687-030 (4th ed. rev. 1991), *available at* 1991 WL 688174.

> and unhook the carts.  The tug was hard on you because you was twisting you[r] body to look back and hook up to your carts.

(Tr. 99.)   The "mill rolls" were rolls of film made in a production line (Tr. 100), and he described a "reclaim cart" as a cart of leftover film from other departments that was collected for recycling back through the system.  (Tr. 100.)  The film described by Plaintiff was very large ("about ½ football field size") sheets of polypropylene.  (Tr. 77.)  Read in context of the record, Plaintiff's description of his job duties as a material handler does not suggest the operation of small machinery or hand tools.

Turning to the remaining semiskilled job cited in the VE's testimony, the Dictionary of Occupational Titles provides the following description of a "Bench Grinder:"

> Moves metal objects, such as castings, billets, machine parts, sheet metal subassemblies, or arrowheads, against abrasive wheel of bench grinder to grind, smooth, or rough-finish objects to specifications:  Clamps workpiece in workholder or jig, or holds it in hands, and feeds it against rotating grinding wheel to remove excess metal, scratches, or burs.  Examines or measures workpiece for conformance to standards.  Guides dressing tool across wheel to true surface.  Replaces worn wheels, using wrench.  May position workpiece in automatic feed mechanism.  May select and mount abrasive wheels of different grit size to grinder to obtain specified finish on workpiece.  May start pump and direct coolant flow against wheel.

U.S. Dep't of Labor, Dictionary of Occupational Titles, 705.684-010 (4th ed., rev. 1991), *available at* 1991 WL 679000.  In contrast, Plaintiff described the grinder job he performed in the recycle department of the plant as one in which he ran a machine that ground up film before it was run through another machine in the department.  His job involved taking the reclaim carts that material handlers had brought to the recycle department, which sometimes were stacked with a fork lift, and running the film in the carts through the grinder.  Plaintiff described this process as follows:

> To run a cart of film through the grinder, you would get on the [fork lift] and take down a few carts at a time that was stack[ed] up in the department[.] [Y]ou would get down off the [fork lift] and run one cart at a time.  You would take a cart of reclaim, and push the cart up into the cart dump by hand; these carts could weigh from 10 pds up to 600 pds or more.  The most the cart dump could pick up and dump


> was about 700 pds. You would push a button on the control panel to raise the cart up and dump a little at a time onto a long metal table in front of the grinder. The table was about waist high and you would take the film that fill [sic] out onto the table when you dump the cart and grind it up. The film could be light weight fluffy film that you had to careful when you grind it; because the grinder would gab [sic] it and if you didn't let go of it, it would yank and pull your arms hard and try to pull you in with the film. About all or most of the carts that came into reclaim . . . was in big heavy folded up bundle[s] and some came in from the slitting department.
>
> The loose film and bundles wouldn't always fall out onto the table; you would have to reach up[,] twist, and pull the film out of the cart by hand which didn't fall out when you raise up the cart to dump it. After you get the bundles out onto the table, you would take one bundle at a time and unfold it flat onto the table. You would take a ½" slab of film that was usually [illegible]" long, and feed it into the grinder by pulling it by hand into the grinder. When you was grinding film you had to be care[ful] not to grind up too much at once or you would plugged [sic] the Grinder and you would have to go down into the Grinder pet [sic] to clean the film out of the Grinder. You would have to take a steel plate off of the back side of the Grinder and pull out the film that plugged the Grinder . . . . You would have to take a long heavy bar and turn the grinder blades by hand to get to the film that was hung up between the blades.
>
> There was a Fluff Ben [sic] that the Grinder blew the film into after it was ground into fluff; when the ben would get full you would go and do other jobs. While you waited for the ben to run down, that usually took two to three hours.

(Tr. 100.) Plaintiff's narrative continues with a description of other jobs that could be done when the fluff bin was full, including operating a machine used to cut rolls of film in half before they were fed into the grinder. (Tr. 100.) From Plaintiff's description, it does not appear this machine, like the grinder, was either small or involved the use of hand tools in its operation.

      Reading Plaintiff's description of his grinder duties in the context of the record, the Court finds the VE's testimony, and thus the ALJ's finding, that Plaintiff's past work included the job of "bench grinder" is not supported by the evidence before the ALJ. Plaintiff's description simply does not fit in any way the occupation cited by the VE in her testimony. Moreover, Plaintiff's summary does not suggest he was operating small machinery or using hand tools in performing any of the jobs identified by the VE's testimony, and the ALJ's findings, as constituting Plaintiff's past relevant

work. Accordingly, the Court finds that the ALJ's findings regarding the nature of Plaintiff's past jobs and transferable skills acquired in those jobs are not supported by substantial evidence. Therefore, the agency's decision must be reversed and the matter remanded for further proceedings.

## Conclusion

For these reasons, the Court declines to adopt Judge Purcell's Report and Recommendation [Doc. 20]. The Commissioner's decision is REVERSED and the case REMANDED for further proceedings consistent with this Order. Specifically, on remand, the ALJ must identify Plaintiff's acquired work skills from his past relevant work, specific occupations to which the acquired work skills are transferable given Plaintiff's residual functional capacity, and the incidence of these occupations in the regional or national economy. Judgment will be entered accordingly.

IT IS SO ORDERED this 26th day of March, 2008.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE